PAUL HOFFMAN (SBN 71244)
JOHN WASHINGTON (SBN 315991)
KAREN KARTUN (SBN 357230)
**Schonbrun Seplow Harris**
**Hoffman & Zeldes, LLP**
200 Pier Ave. Ste. 226
Hermosa Beach, California 90254
Phone: 310-717-7373
e. hoffpaul@aol.com; jwashington@sshhzlaw.com;
kkartun@hoffmanwashington.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

CARLY RUSSELL and SCOTT RUSSELL,

PLAINTIFF,

v.

CITY OF LOS ANGELES, a municipal entity, JIM MCDONNELL, LAPD CHIEF, sued in his official capacity; COUNTY OF LOS ANGELES, LASD SHERIFF ROBERT G. LUNA, sued in his official capacity; and DOES 1-10 inclusive,

DEFENDANTS.

CASE NO.: COMPLAINT FOR DAMAGES

42 U.S.C. § 1983: U.S. CONSTITUTION: FIRST, FOURTH, AND FOURTEENTH AMENDMENTS
CALIFORNIA CONSTITUTION, ARTICLES 1, §§ 2, 3, 7, 13
CALIFORNIA CIVIL CODE § 52.1;
ASSAULT, BATTERY

## I. JURISDICTION AND VENUE

1. This is an action for damages for violations of Plaintiffs' federal and state constitutional and statutory rights. Jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1343 as Plaintiffs assert a claim under 42 U.S.C. § 1983. The Court has supplemental jurisdiction to consider Plaintiffs' state law claims under 28 U.S.C. § 1367 as these state law claims arise from the same common nucleus of operative facts as Plaintiffs' federal claims.

2. Venue is proper in the Western Division of the Central District of California pursuant to 28 U.S.C. § 1931(b) because the events and conduct giving rise to Plaintiffs' claims all occurred in the City of Los Angeles.

## II. INTRODUCTION

3. On June 8, 2025, protesters gathered in Downtown Los Angeles to express their opposition to federal immigration enforcement activities in the Los Angeles area.

4. Despite years of massive protests in the City, and despite express warnings about the LAPD's failure to abide by constitutional requirements during protests, including the recommended retraining of LAPD officers and command staff on crowd control practices, the LAPD was woefully unprepared to respond to the June 2025 protests. The same is true of the Los Angeles County Sheriff's Department (LASD").

5. Plaintiffs attended the June 8, 2025 protest to peacefully express their opposition to the Administration's immigration policies. Instead, they suffered excessive force and terror and had the LAPD and LASD extinguish their First Amendment Rights.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiffs timely filed claims for damages pursuant to California Government Code § 910 with both the City and County of Los Angeles. This case is filed more than 45 days since the submission of the claim. The complaint in this action is filed within the statutory time limit.

## IV. PARTIES

### A. Plaintiffs

7. Plaintiff **CARLY RUSSELL** is a resident of Los Angeles County. She attended the June 8, 2025 protest in Downtown Los Angeles with her husband plaintiff Scott Russell to protest the Administration's immigration policies. She was engaged in the peaceful exercise of her First Amendment Rights at all times.

8. Plaintiff **SCOTT RUSSELL** is a resident of Los Angeles County. He attended the June 8, 2025, protest in Downtown Los Angeles with his wife plaintiff Carly Russell to protest the Administration's immigration policies. He was engaged in the peaceful exercise of his First Amendment Rights at all times.

### B. Defendants

9. Defendant **CITY OF LOS ANGELES** is a municipal corporation duly organized and existing under the Constitution and laws of the State of California. The Los Angeles Police Department is an agency of Defendant City, and all actions of the LAPD are the legal responsibility of the City. At all relevant times, Defendant City was responsible for assuring that the actions, omissions, policies, practices, and customs of the LAPD and its employees and agents complied with the laws of the United States and the State of California.

10. Defendant **JIM MCDONNELL** was, at all times relevant to this action, the LAPD police chief and a policymaker for the department. He is sued in his official capacity.

11. The **County of Los Angeles** is a municipal corporation duly organized and existing under the laws of California and is responsible for the actions of the LASD. The LASD is a local government agency of Defendant County. All actions of the LASD are the legal responsibility of Defendant County.

12. Robert Luna is the elected Sheriff of the County of Los Angeles and is the leader and policy maker of the LASD. He is sued in his official capacity.

13. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 were agents, servants, or employees of Defendant City and the LAPD

or the LASD and County and were acting under the color of law. Plaintiffs are ignorant of the true names and capacities sued herein as Does 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

14. Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto, Does 1 through 10, in addition to the named Defendants, are responsible in some manner for the damages and injuries alleged herein.

15. Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto, Defendants, and each of them, were the agents, servants, and employees of the other Defendants and were acting at all times within the scope of their agency and employment and with the knowledge and consent of their principal and employer. At all times, Defendants acted under the color of state law.

## V. FACTUAL BACKGROUND

16. On June 8, 2025, Plaintiffs attended protests in downtown Los Angeles concerning the Administration's immigration policies. They arrived between approximately 6:00 and 6:30PM and joined the protests on Main Street near the 101 Freeway. For more than an hour they peacefully protested with many other protestors without incident.

17. At approximately 8:00 PM LAPD officers on foot and on horseback suddenly charged the protestors in this area, including Plaintiffs. Plaintiffs did not hear any order to disperse or any other directions from the LAPD. Plaintiffs tried to get out of the way of the officers to avoid injury. They were near Main and Arcadia at this time.

18. Plaintiff Scott Russell saw his wife Carly being manhandled by LAPD officers and yelled at the officers to stop hurting his wife. Instead, LAPD officers

hit him on the forearm and elbow without any reason. An LAPD officer told him to run but when he started to move away he was again hit by LAPD officers without any justification. He continued to be hit by foot officers and officers on horseback.

19. As he moved to avoid being hit he was thrown to the ground by LAPD officers. While on the ground he was hit repeatedly by LAPD officers without justification. An LAPD officer on horseback deliberately rode over him with the intent to cause him injury. When he tried to move to safety he was thrown from his full height to the ground with full force causing him injury.

20. Plaintiff Scott Russell was placed in handcuffs and arrested at the scene. His injuries made it difficult to stand or walk. He was placed in a police vehicle in overly tight handcuffs for at least an hour and then transferred to another police vehicle still in overly tight handcuffs for at least another hour. His requests to loosen the handcuffs were ignored by the officers

21. Some of plaintiff Russell's injuries subsided over time but he still suffers from the injuries he suffered at the hands of the LAPD that night, including injury to his knee which may require surgery.

22. In the same time frame, plaintiff Carly Russell was pushed to the ground by LAPD officers several times causing her injury. At one point she was dragged across the ground by her bra strap by an LAPD officer. She was stomped on her thigh and right hip by LAPD officers. At one point she was pushed under a Sheriff's Department horse and shoved to the ground by another LASD Deputy. She was told to leave the scene by another Deputy and she did so.

23. She spent the next few hours trying to find her husband fearing that he had suffered serious injury. After several hours, she found him in LAPD custody and bailed him out.

24. Plaintiff Carly Russell continues to suffer from the injuries suffered at the hands of LAPD officers and LASD deputies. In particular, her hip continues to cause her great pain and may require surgery.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(First and Fourteenth Amendments to the U.S. Constitution. S.C. § 1983 for damages)**

25. Plaintiffs re-allege and incorporate herein by reference the preceding and any subsequent paragraphs in this Complaint.

26. The First Amendment guarantees the right of people to demonstrate and protest government policies without being subjected to arbitrary restrictions or the threat or reality of physical violence. Plaintiffs were subjected to unreasonable and arbitrary restrictions on their right to exercise their First Amendment rights as well as the use of excessive and unreasonable force against them in response to their peaceful exercise of their First Amendment rights

27. Plaintiffs suffered physical injuries as a result of Defendants' actions as well as the loss of invaluable First Amendment rights.

28. Defendants acted with reckless disregard for Plaintiffs' constitutional rights justifying an award of punitive damages.

29. Defendants' acts were willful, wanton, malicious, oppressive, and done with conscious or reckless disregard, causing harm to Plaintiffs.

### SECOND CLAIM FOR RELIEF

**(Fourth and Fourteenth Amendments to the U.S. Constitution. 42 U.S.C. § 1983 for damages)**

30. Plaintiffs re-allege and incorporate by reference the preceding and subsequent paragraphs as though fully set forth herein.

31. Plaintiffs were subjected to excessive and unreasonable force by defendants as alleged above without law enforcement justification and with intent to injure them. Plaintiffs were not engaged in any activity that posed any threat to officers or anyone else when they were subjected to this excessive and unreasonable force.

32. As a direct result and proximate result of the aforementioned acts and omissions of defendants, plaintiffs suffered damages in an amount to be established at trial.

33. Defendants acts were willful, wanton, malicious, oppressive, and done with conscious or reckless disregard, causing harm to Plaintiff. Defendants acted with reckless disregard for Plaintiffs' constitutional rights justifying an award of punitive damages.

**THIRD CLAIM FOR RELIEF**

**(Monell Liability for Violations of Plaintiff's First, Fourth and Fourteenth Amendment Rights)**

34. Plaintiffs re-allege and incorporate by reference the preceding and subsequent paragraphs as though fully set forth herein.

35. The defendant City's and County's policies and customs were the moving force and proximate cause of the violations and injuries plaintiffs suffered.

36. Plaintiffs' Monell claims against the City of Los Angeles are based on the following customs, policies and practices:

a. Defendant City has a long-standing custom and practice of using indiscriminate force, including the use of less lethal weapons and munitions against peaceful protestors. This custom and practice was the moving force causing the constitutional violations and injuries plaintiff suffered. This long-standing custom and practice is set forth in the Fourth Amended Complaint in *Black Lives Matter v. City of Los Angeles*, Case No.: 2:20-cv-05027-CBM-AS, including information about more than sixty protesters subjected to excessive and

unreasonable force during the 2020 Geroge Floyd protests. A preliminary injunction was issued in the BLM case and in 2026 Judge Marshall found the LAPD in contempt based on the LAPD's treatment of protesters during the June 2025 immigration protests.

b. Defendant City has failed to adequately train its officers charged with using less than lethal weapons while policing protests which has lead directly to the unconstitutional and indiscriminate use of force against peaceful protestors and the journalists covering them.

c. Defendant City has failed to discipline officers for the unconstitutional and indiscriminate use of force against protestors and journalists that cover them.

d. Defendant McDonnell by his acts and omissions has ratified the indiscriminate use of less lethal weapons against peaceful protestors and the journalists covering them, including plaintiff. By ratifying such conduct, defendant McDonnell's actions and omissions were a cause of plaintiff's violations and injuries.

37. The impact of these policies and customs on the constitutional rights of protestors and journalists has been the basis for the issuance of a preliminary injunction in *Los Angeles Press Club v. City of Los Angeles*, Case No. 2:25-cv-05423-HDU-E, on September 1, 2025, and a contempt order for the violation of the preliminary injunction issued in *Black Lives Matter, et al. v. City of Los Angeles*, Case No. 2:20-cv-05027-CBM, on January 15, 2026. These orders pertain to the LAPD's conduct during the June 2025 protests and plaintiff relies on these orders and the evidence underlying them in asserting his *Monell* claims in this case.

38. Plaintiffs' *Monell* claims against the County of Los Angeles are based on the following customs, policies and practices:

a. Defendant County has a long-standing custom and practice of using indiscriminate force against peaceful protesters. This custom and practice was the moving force and cause of plaintiff Carly Russell's injuries These customs, policies

and and practices are set forth in the allegations and evidence presented in *Berg v. County of Los Angeles*, case No.: 2:20-CV-07870 DMG PD, in which Judge Gee entered a preliminary injunction against the County and a finding of contempt for the violation of that injunction based on the LASD's use of indiscriminate force against peaceful protesters during the June 2025 protests against Administration immigration policies.

b. The County and LASD have failed to discipline deputies for the use of unconstitutional or indiscriminate force against peaceful protesters during the June 2025 protests.

c. Defendant Luna by his actions and omissions has ratified the use of force against peaceful protesters during the June 2025 protests in Downtown Los Angeles.

**FOURTH CLAIM FOR RELIEF**

**(Violation of the Bane Act, Cal. Civil Code § 52.1)**

39. Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully set forth herein.

40. The federal and state constitutions guarantee the right be free from unnecessary and excessive force by law enforcement officers. Defendants, by engaging in the wrongful acts and failures to act alleged above, denied these rights to Plaintiffs by threats, intimidation, or coercion, to deter, prevent, and in retaliation for the exercise of Plaintiffs' First Amendment rights and statutory rights, in violation of Cal. Civ. Code § 52.1.

41. California Civil Code, Section 52.1, known as the Tom Bane Civil Rights Act, provides that : "if a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States" may prosecute an action "for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the

peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct.” Cal. Civ. Code § 52.1.

42. As alleged herein, the LAPD and the LASD unlawfully used force and the threat of force against Plaintiffs to intimidate them and interfere with Plaintiffs’ constitutional right to peacefully protest administration policies.

43. By using excessive and unreasonable force against Plaintiffs while they exercised their First Amendment and statutory rights, LAPD officers and LASD deputies used threat and intimidation to interfere with Plaintiff’s rights secured under the Constitution of the United States and the Constitution of the State of California. The use of unreasonable force by Defendants was a substantial factor in causing the violation of rights and attendant harm endured by Plaintiffs.

44. Defendants City and County are liable for the wrongful conduct of its employees and its agents through the doctrine of respondeat superior and vicarious liability. Defendants’ actions, as alleged above, constituted interference by threat, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California, in violation of Cal. Civil Code §52.1. The violation of § 52.1 includes abuses of Plaintiffs’ rights delineated in this Complaint.

45. The conduct of Defendants was willful, wanton, malicious, and done with conscious or reckless disregard, causing harm to Plaintiffs.

## FIFTH CLAIM FOR RELIEF

## (Battery by a Police Officer, California Civil Code §43))

46. Plaintiffs re-allege and incorporate by reference the preceding and subsequent paragraphs as though fully set forth herein.

47. Defendants used force against Plaintiffs by subjecting them to excessive force while peacefully protesting. Defendants, by the actions of LAPD

officers and LASD deputies, intentionally touched Plaintiffs without his consent and without lawful justification.

48. As a direct and proximate result of the aforementioned acts or omissions, Plaintiffs sustained and incurred damages, including pain and suffering.

49. The use of such force by LAPD officers and LASD deputies was a substantial factor in causing harm to Plaintiffs.

50. The CITY and COUNTY are liable for the actions of the individual Defendants through respondeat superior.

**SIXTH CLAIM FOR RELIEF**

**(Assault)**

51. Plaintiffs re-allege and incorporate by reference the preceding and subsequent paragraphs as though fully set forth herein.

52. The individual defendants acted with the intention to cause harmful or offensive contact with Plaintiffs.

53. At the time of the events giving rise to this action, Plaintiffs reasonably believed that he was about to be touched in a harmful or offensive manner or threatened to be touched in a harmful or offensive manner, both before and after they were repeatedly battered by the individual Defendants;

54. Based on the actions of the individual Defendants, it reasonably appeared to Plaintiffs that Defendants were about to carry out the threat

55. Plaintiffs did not consent to the Defendants' conduct

56. Defendants' actions were the direct and proximate cause, and a substantial factor, of the harm to Plaintiffs.

57. The CITY and COUNTY are liable for the actions of the individual Defendants through respondeat superior.

## VII. REQUEST FOR RELIEF

Wherefore, Plaintiffs seek judgment as follows:

1. General and compensatory damages for Plaintiffs for the violations of his federal constitutional and statutory rights, pain and suffering, all to be determined according to proof;

2. An award of attorneys' fees pursuant to 42 U.S.C. § 1988 and Cal. Civil Code §§ 52(b) & 52.1(h) and Cal. Code of Civ. Proc. § 1021.5;

3. Costs of suit;

4. Pre- and post-judgment interest as permitted by law;

5. Such other and further relief as the Court may deem just and proper.

Dated: July 17, 2026

Schonbrun Seplow Harris Hoffman
& Zeldes, LLP

/s/ Paul Hoffman
By: Paul L. Hoffman
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial in this action.

Dated: July 17, 2026

/s/ Paul Hoffman
By: Paul L. Hoffman
Attorney for Plaintiff